IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD A. MARTONIK, )<br>    Plaintiff, )<br>)<br>          v. )<br>)<br>PATRICK R. DONAHOE, )<br>Postmaster General, )<br>United States Postal Service, )<br>    Defendant. ) | Civil Action No. 12-0704<br>United States Magistrate Judge<br>Cynthia Reed Eddy |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

For the reasons that follow, it is respectfully recommended that Defendant's Motion For Summary Judgment [ECF No. 17] be granted on all counts.

**II. REPORT**

    **A. Relevant and Material Facts**

Plaintiff Richard A. Martonik ("Martonik"), age 52, has held several positions since beginning his employment with the United States Postal Service ("Postal Service") in 1986 and is currently the manager of the South Hills Branch located in Allegheny County. The actions giving rise to Martonik's complaint occurred during the fall of 2010 through early 2011 while Martonik was the Manager of Customer Service at the Blawnox Branch Office of the Postal Service. Defendant's Concise Statement of Material Facts, [ECF No. 19 at ¶ 4]; Ex. 1 at 19 (Deposition of Richard A. Martonik dtd. 4/19/13).

As manager of customer service at the Blawnox Branch, a medium-sized facility, Martonik was an EAS Level 20 employee with an annual salary of $73,955. In his capacity as a manager

1

of customer service, Martonik was responsible for the supervision of over 30 employees including lower level supervisors, clerks, and carriers. Defendant's Concise Statement of Material Facts, [ECF No. 19 at ¶¶ 5-7]. During the period in which the alleged incidents giving rise to plaintiff's complaint occurred, Martonik reported to Manager of Customer Service Operations Lori Price ("Price"), who in turn reported to the then-Acting Postmaster of Pittsburgh, Marie Posway ("Posway"). *Id.* at ¶¶ 9-10.

In December 2010, Martonik, along with approximately 30 other Postal Service managers from in and around Pittsburgh, participated in a conference call led by Post Office Operations Manager Bill Battles ("Battles"). The purpose of the call was to instruct the managers on the plan for collecting mail during the busy Christmas season. *Id.* at ¶¶ 13-14. During the call, Martonik spoke out against the practicality of the plan, allegedly enraging Battles. *Id.* at ¶¶ 14-15; Martonik Dep., Ex.1 at 34-35. Following the call, Martonik was reprimanded by Price for speaking out against the plan on the conference call instead of addressing the issue directly with Price. In response, Martonik stated that he felt Price was "harassing" him, but not because of his age or gender. *Id.* at ¶¶ 17-19; Martonik Dep., Ex. 1 at 35-38. Martonik characterizes this telephone call between Price and himself as a "protected activity." *Id.* at ¶ 20; Ex.4 (Plaintiff's Response to Defendant's Interrogatory No. 2).

During the summer or fall of 2010, the Postal Service's Office of Inspector General issued a report regarding financial deficiencies at the Blawnox Branch including unpaid accounts and improper bookkeeping. Defendant's Concise Statement of Material Facts, [ECF No. 19 at ¶ 21]; Ex. 3 at 12-13 (Deposition of Marie Posway-Myers). The deficiencies were attributed to the prior branch manager; however Martonik was responsible for implementing procedures to remedy the deficiencies. According to Acting Postmaster Posway's undisputed testimony, Price sent him on

Developmental Detail to shadow management at the Pleasant Hills Post Office for two weeks in order to aid Martonik. *Id.* at ¶¶ 23-24.

On January 3rd and 4th, 2011, Martonik contacted Price to request extra help at the Blawnox Branch because employees had called off work and there was a "ton of mail" to deliver. *Id.* at ¶ 27; Ex. 5 (Plaintiff's e-mail to Price dtd. 1/3/11). During his deposition Martonik was asked "[t]his was kind of like the long New Year's Eve kind of weekend, they're extending it longer by being quote 'sick;' right?", to which Martonik answered in the affirmative. *Id.* at ¶ 28; Martonik Dep., Ex. 1 at 46. Despite Price's unhappiness with the way in which Martonik policed employee attendance at his branch, Price sent temporary workers to cover some of the shifts left open by the call offs. *Id.* at ¶ 30; Ex. 6 at 39-40 (Deposition of Richard A. Martonik dtd. 11/9/11).

On January 5th, 2011, Price was informed by Postal Service operational support that there was a significant amount of delayed, or undelivered, mail at the Blawnox Branch. Price inspected the office later that day discovering, "[t]he Blawnox office was a mess. It was in complete disarray, and it needed to be fixed." More specifically, Price noted such problems as:

> (1) The presence of Undelivered Mail Reports filled out by letter carriers with the remark 'delayed mail told to leave my management;' (2) the presence of 'excessive amount of mail on the floor,' including 9,529 pieces of delayed mail as reported by CSDRS; (3) batches of mail that were not properly labeled for dispatch; and (4) delayed mail not reported in the CSDRS as required.

*Id.* at ¶ 47; Ex. 10 at 222-223 (Pre-Disciplinary Interview conducted by Lori Price).

When confronted by Price about the delayed mail and the fact that it had not been reported into CSDRS, Martonik placed the blame on supervisor Larry Stoken ("Stoken") for failing to report the delayed mail into CSDRS as Martonik had ordered him to do. Martonik Dep., Ex.1 at 49. Though Martonik placed the blame on Stoken for failing to report the delayed mail, Martonik

acknowledged that, as manager of the branch, he was ultimately responsible for data entry reports and that the "buck stops" with him. Martonik Dep.., Ex. 1 at 47.

Price determined that Martonik had lost managerial control over his operations and placed him on "Emergency Placement in an Off-Duty Status"[1] beginning on January 7th, 2011, so that Price could complete her investigation of the branch. *Id.* at ¶ 49; Ex. 11 (Emergency Placement letter dtd. 1/7/11). Price informed Martonik of the Emergency Placement by "personally meeting with him on the morning of January 7th, 2011, at which time Plaintiff became 'extremely angry' and began yelling at Lori Price to the point where she felt threatened and called Postal Police to the scene." *Id.* at ¶ 50; Ex. 12 (Postal Police Incident Report & Lori Price Notes). Maureen Gerst, age 43, was named acting manager for the two week period in which Martonik was placed on leave.

On January 8th and 11th, 2011, Martonik received letters via certified mail requesting his attendance at a Pre-Disciplinary Interview ("PDI") to discuss the deficiencies at the Blawnox Branch and determine what/if any punitive action Martonik faced. Martonik did not receive either letter because he had traveled to California for a vacation that had been previously been denied by Price. *Id.* at ¶¶ 51-55. Finally, on January 18th, 2011, Martonik, with union representation, attended a PDI conducted by Price to specifically address the following:

> [T]o account for the mail which was not color coded,[2] to account for the delayed mail within the office, to account for failures to notify me of the delayed mail, to account for the inaccurate reports in CSDRS, and explain why you did not appear for the administrative interviews scheduled as part of my official investigation into the allegations involving the Blawnox post office.

---

[1] Suspension without pay for up to 14 days.
[2] A Color code system is used by the US Postal Service nationwide to denote which day a piece of mail must be delivered.

4

*Id.* at ¶ 58; Ex. 17 at p.213 (Proposed Letter of Warning Memo). On January 21st, 2011, Price issued Martonik a "Proposed Letter of Warning in Lieu of a Fourteen Day Suspension" based on charges of Unsatisfactory Peformance and Improper Conduct. *Id.* at ¶ 59. Acting Postmaster Posway reviewed the Proposed Letter of Warning and on February 25th, 2011 issued a "Letter of Decision" affirming the Proposed Letter of Warning. The Letter of Decision was placed in Martonik's employment record for two years. *Id.* at ¶ 64; Ex.18 (Letter of Decision dtd. 2/25/11).

Martonik appealed the Letter of Decision, and on May 4th, 2011 Postal Service Labor Relations Manager Richard Acker ("Acker") rescinded Martonik's Emergency Placement stating that "[f]ailure to follow procedure in and of itself does not create an emergency situation." Acker, however, ruled that because Martonik took an unauthorized vacation during his Emergency Placement that he was only entitled to back pay for one day, January 7th, 2011. *Id.* at ¶ 56; Ex. 16 (Appeal Decision Letter dtd. 5/4/11).

On January 24th, 2011, Price placed Martonik on a Peformance Improvement Plan ("PIP") that was designed to address and combat the deficiencies of the Blawnox Branch. Martonik was successful in meeting the goals of the PIP. *Id.* at ¶¶ 67-70.

Martonik alleges that he was given disparate treatment by a "clique" of younger, female Postal Service managers including Price, Posway, and Gerst because he was an older male, thus causing a hostile work environment. Martonik alleges that this "clique" tried to "make a name for themselves by disciplining people" and "their reputation among the 20-30 managers in the Pittsburgh Area was sexual discrimination in favoring females getting employment opportunities."[3] Martonik also alleges that similarly situated Postal Service employees were not disciplined for similar misconduct for which Martonik was disciplined. Additionally, Martonik alleges that he was retaliated against by his female superiors for engaging in a protected activity,

---

[3] It should be noted that Plaintiff does not provide any evidence to support these statements.

i.e., the heated telephone call with Price and the filing of a complaint with the Equal Employment Opportunity Commission ("EEOC"). Martonik seeks loss of pay damages, emotional distress damages, and reimbursement of counsel fees. Plaintiff's Concise Statement of Material Facts, [ECF No. 21 at ¶¶ 1, 17].

### B. Standard of Review for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." When applying this standard, the court must examine the factual record and reasonable inferences therefrom in the light most favorable to the pary opposing summary judgment. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986). A fact is material if it might affect the outcome of the suit under the governing law. *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006).

A party claiming that a fact cannot be or is genuinely disputed must support that assertion either by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other material; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed.R.Civ.P. 56(c)(1).

Moreover, a "party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed.R.Civ.P. 56(c)(2).

The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. *Celotex Corp. v. Catrett*, 477 U.S. 317

(1986); *UPMC Health Sys. v. Metropolitan Life Ins. Co.*, 391 F.3d 497, 502 (3d Cir.2004). The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir.1989) (non-movant must present affirmative evidence – more than a scintilla but less than a preponderance – which supports each element of his claim to defeat a properly presented motion for summary judgment).

The non-moving party cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Plaintiff must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir.2001). The non-moving party "must present more than bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

When considering a motion for summary judgment, the court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The inquiry, then, involves determining "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Brown v. Grabowski*, 922 F.2d 1097, 1111 (3d Cir. 1990), *cert. denied*, 501 U.S. 1218 (1991) (quoting *Anderson*, 477 U.S. at 251–52). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue

of material fact if a reasonable jury could find for the non-moving party." *Pignataro v. Port Auth. Of N.Y. & N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir. 1997)).

### C. Burden Shifting Analysis

On a motion for summary judgment in federal employment discrimination cases, the court's analysis is guided by the *McDonnell Douglas* formulation regarding the "appropriate burdens of proof and allocation of production of evidence." *Johnson v. McGraw-Hill Co.*, 451 F.Supp.2d 681, 691 (W.D.Pa. 2006) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under the *McDonnell Douglas* burden shifting analysis, a Title VII complainant carries the initial burden of establishing a *prima facie* case of discrimination. *McDonnell Douglas*, 411 U.S. at 802. Once a Title VII complainant establishes a prima facie case of discrimination, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for the employer's adverse action against the complainant. *Id.* Having articulated a legitimate, nondiscriminatory reason for the adverse action, the complainant must then "present evidence contradicting the core facts put forward by the employer as the legitimate reason for its decision." *Thimons v. PNC Bank*, 254 Fed.Appx. 896, 897-898 (3d Cir. 2007) (citing *Kautz v. Met-Pro Corp.*, 412 F.3d 463, 467 (3d Cir. 2005)). The complainant's claim will not survive summary judgment if she is unable to satisfy the third step of analysis. *Thimons*, 254 Fed.Appx. at 898.

In order for a complainant to survive summary judgment at the third stage of the *McDonnell Douglas* analysis, the complainant must provide evidence to establish that the employer's justification under the second stage of analysis was pretext. *Id.* "[T]he plaintiff must point to some evidence, direct or circumstantial, from which factfinder could reasonably either (1)

disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.,* 142 F.3d 639, 644 (3d Cir. 1998).

The *McDonnell Douglas* analysis applied to claims of employment discrimination under Title VII are also applied to claims of employment discrimination under the Age Discrimination in Employment Act ("ADEA"). *See, e.g., Colwell v. Rite Aid Corp.,* 602 F.3d 495, 500 n. 3 (3d Cir. 2010); *Matczak v. Frankford Candy and Chocolate Co.,* 136 F.3d 933, 938 (3d Cir. 1997); *Kelly v. Drexel Univ.,* 94 F.3d 102, 105 (3d Cir. 1996).

**D. Discussion and Analysis**

Plaintiff has failed to adduce genuine issues of material fact necessary to support elements of his discrimination and retaliation claims under Title VII of the 1964 Civil Rights Act or the Age Discrimination in Employment Act. Defendant, United States Postal Service, is therefore entitled to summary judgment on all claims.

**1. Age Discrimination in Employment Act**

The ADEA prohibits employment discrimination on the basis of age. 29 U.S.C. § 623. Martonik presents his age discrimination claim under two theories, disparate treatment and hostile work environment. Compl., [ECF No. 1 at ¶ 19]. A disparate treatment case is established, after a *prima facie* case of discrimination is shown, "when an individual of a protected group is shown to have been singled out and treated less favorably than others similarly situated on the basis of an impermissible criterion under Title VII." *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 347 (3d Cir. 1990).

To establish a *prima facie* case of age discrimination, Martonik must show that he: "is forty years of age or older; second, that the defendant took an adverse employment action against the plaintiff; third, that the plaintiff was qualified for the position in question; and fourth, that the plaintiff was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus." *Smith v. City of Allentown*, 589 F.3d 684, 689 (3d Cir. 2009). Martonik satisfied the first three elements. Martonik was 51 years old when he was suspended without pay, and while he was suspended as a result of his own mismanagement, Martonik was/is arguably qualified for the position as he is currently Branch Manager of the South Hills Branch. Defendant's Concise State of Material Facts, [ECF No. 19 at ¶ 2].

The fourth element, "ultimately replaced by another employee who was sufficiently younger," is more difficult for Martonik to establish. During Martonik's two week suspension, Maureen Gerst, then age 41, temporarily assumed Martonik's managerial responsibilities. *Id.* at ¶ 57. While the ten year age difference between Martonik and Gerst creates an inference of age discrimination, the Third Circuit has not ruled on whether a temporary cover is sufficient to constitute "ultimately replaced." *Monaco v. Gen. Am. Assur. Co.*, 359 F.3d 296, 301–304 (3d Cir. 2004). Therefore, in line with the summary judgment standard of review, this Court views the ambiguity in the definition of "ultimately replaced" in the light most favorable to the Plaintiff and thus Martonik has established a *prima facie* case.

Under the *McDonnell Douglas* burden shifting analysis, once an employee establishes a *prima facie* case of discrimination, the burden shifts to the employer to articulate a "legitimate, nondiscriminatory reason" for the adverse action or actions taken against the employee. *McDonnell Douglas*, 411 U.S. at 802. Martonik alleges that three adverse employment actions were taken against him: 1) placement on Developmental Detail; 2) Emergency Placement

Without Pay; and 3) placement on a Performance Improvement Plan. Defendant's Concise Statement of Material Facts, [ECF no. 19 at ¶ 84]. Postal Service management counters that placement on Developmental Detail was done because of procedural deficiencies and budget concerns and to generally improve Martonik's work performance. *Id.* at ¶ 25. As for the Emergency Placement Without Pay, the Postal service alleges that multiple legitimate, non-discriminatory factors motivated the decision including: "the continuing need for mail delivery assistance, the amount of undelivered mail at the branch office, the failure to report delayed mail in the central reporting system and other violations of postal procedures." Defendant's Brief in Support of Motion for Summary Judgment, [ECF No. 18 at p. 16]. Lastly, the Postal service alleges that Martonik's placement on a Performance Improvement Plan was motivated by, as the name suggests, the need to improve Martonik's performance. Having articulated legitimate non-discriminatory reasons for each of the alleged adverse employment actions, the Postal Service has met its burden and the burden shifts back to Martonik to establish pretext. Martonik fails in this instance.

To establish pretext, Martonik must point to some evidence, direct or circumstantial, from which this Court could reasonably either "(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Thimons*, 254 Fed.Appx. at 898 (citing *Simpson v. Kay Jewelers, Div. of Sterling, Inc.*, 142 F.3d 639, 644 (3d Cir.1998)). Martonik alleges that he suffered multiple adverse employment actions while younger similarly situated co-workers or "comparators" Jackie Sidick, Jerry Kennedy, and Maureen Gerst were not disciplined for comparable misconduct. Plaintiff's Brief in Opposition to Defendant's Motion for

Summary Judgment, [ECF No. 24 at ¶¶ 67-69]. However, the evidence before the Court shows that his comparators were not, in fact, "similarly situated."

In order to establish that Sidick, Kennedy, or Gerst were similarly situated, Martonik must demonstrate they "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *George v. Wilbur Chocolate Co., Inc.*, 2010 WL 1754477 at *4 (E.D.Pa. 2010) (citing *Bullock v. Children's Hosp. of Phila.*, 71 F.Supp.2d 482, 489 (E.D.Pa. 1999)). As to Sidick and Gerst, the Postal Service has demonstrated that they are not similarly situated to Martonik, for the following reasons:

> One, Sidick and Gerst had different pay levels and annual salaries than the Plaintiff. *Compare* SOF at ¶ 93 (Sidick – EAS Level 17 at $62,500 annual salary) and ¶ 100 (Gerst – EAS Level 21 at $78,418 annual salary), *with* ¶ 5 (Plaintiff – EAS Level 20 at $73,955 annual salary). Two, Sidick and Gerst had different job descriptions than the Plainitff. *Compare* SOF at ¶¶ 93, 94, 101 (Sidick – Supervisor Customer Service) and ¶ 100, 101 (Gerst – EAS-21 Manager of Customer Service of "a *large* detached mails unit operation . . . normally in an area broader than that associated with a station or branch"), *with* ¶¶ 4-6, 101 (Plaintiff – EAS Level 20 manager of Customer Service of a "*medium* size . . . carrier station or branch"). Three, the alleged misconduct was sufficiently different between the three employees. Sidick was disciplined for one incident involving the improper color-coding of the mail. *Id.* at ¶¶ 95, 97. Gerst was never disciplined for an alleged color-coding incident because the allegation stemmed from a biased employee. *Id.* at ¶¶ 102-104. On the other hand, Plaintiff's discipline stemmed from multiple infractions that included: delaying the delivery of mail, failing to report mail in the CSDRS, failure to properly color-code the mail, lack of cooperation regarding the investigative interviews, and failure to address attendance issues. *Id.* at ¶¶ 46-54, 57, 59-61. Four, Sidick and Plaintiff had different supervisors who were responsible for imposing their discipline. *Compare id.* at ¶ 98 (the supervisor who imposed discipline on Sidick was Maureen Gerst), *with id.* at ¶¶ 59, 64 (the supervisors that imposed discipline on Plaintiff were Lori Price and Marie Posway). Five, each of the employees were assigned to different work locations.

Defendant's Brief in Support of Motion for Summary Judgment, [ECF No. 18 at pp. 6-7] (alterations in original). Additionally, Sidick is not a legitimate comparator because she is only

two years younger than Martonik and the Third Circuit has held a one to two year age difference insufficient to create an inference of age discrimination. *Kehres v. Kline*, 132 Fed. Appx. 992, 994 (3d Cir.2005).

As for Kennedy, Martonik's own admission highlights the differences between the two. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, [ECF No. 24 at ¶ 68]. First, Kennedy was an EAS Level 17 supervisor as opposed to Martonik's Level 20 manager status. *Id.* Secondly, Martonik points out that Kennedy was given more lenient discipline, which is true because Kennedy's misconduct, changing color codes, was of less severity and frequency than Martonik's misconduct. *Id.* The difference in the severity of the misconduct is a legitimate, non-discriminatory reason for the difference in the severity of the punishment making Kennedy and Martonik not similarly situated.

The fourth prong of an ADEA discrimination claim requires the plaintiff to show that her position was filled by a person sufficiently younger to raise an inference of age discrimination. *Smith*, 589 F.3d at 689. In an attempt to satisfy this prong, Martonik points to the fact that during his suspension Gerst, a younger employee, acted as a temporary cover. Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, [ECF No.24 at ¶ 69]. However, a redistribution of duties among current employees, even if younger, does not, without more, constitute a "replacement" of a former employee. *Michniewicz v. Metasource, LLC*, 756 F.Supp.2d 657, 666 (E.D.Pa. 2010) ("A terminated employee is not replaced, however, when another employee is assigned to perform the terminated employee's duties in addition to other duties, or when work is redistributed among other remaining employees already performing related work."). The fact that Gerst is younger does not in and of itself demonstrate discrimination under the ADEA. *Millard v. CoreStates Fin. Corp. et al.*, 2001 WL 1175135 at *2

(E.D.Pa. 2001) ("a person is not 'replaced' for purpose of a *prima facie* age discrimination action where duties are undertaken by a younger person or persons already employed by the Defendant"). Martonik has not adduced any evidence that his position was "ultimately replaced" by a younger person and therefore cannot satisfy the fourth "most important" prong. *Thimons*, 254 Fed.Appx. at 898.

Martonik has failed to offer material facts to establish essential elements of his ADEA claim under a disparate treatment theory, and there is no dispute of material facts that might cause a reasonable jury to find otherwise. The Postal Service's motion for summary judgment as to this claim should be granted.

### 2. Title VII of the 1964 Civil Rights Act-Gender Discrimination Claim

Title VII of the 1964 Civil Rights Act prohibits employment discrimination on the basis of race, sex, color, religion, and national origin. 42 U.S.C. §§ 2000e-16. Title VII claims based on circumstantial evidence, as ADEA claims, follow the *McDonnell-Douglas* burden shifting analysis. *McDonnell-Douglas*, 93 S.Ct. 1817. To establish a *prima facie* case of gender discrimination, Martonik must show that: "(1) [he] is a member of a protected class;(2) [he] is qualified for the position in question; (3) [he] suffered an adverse employment action; and (4) circumstances exist that give rise to an inference of unlawful discrimination in that similarly situated [female] employees were treated more favorably." *Brown-Baumback v. B & B Auto. Inc.*, 437 Fed.Appx. 129, 134 (3d Cir. 2011). Applying the same analysis as used for Martonik's ADEA claim, *supra*, the first three factors are satisfied. Martonik's claim fails, however, on the fourth factor.

Using comparators Sidick and Gerst, Martonik alleges that "similarly situated" females were given preferential treatment by management. Plaintiff's Brief in Opposition to Defendant's

Motion for Summary Judgment, [ECF No. 24 at ¶¶ 67, 69]. However, as analyzed above, Sidick and Gerst were not proper comparators for the purposes of a discrimination claim as they are not "similarly situated in all relevant aspects." *Wilcher v. Postmaster Gen.*, 441 Fed.Appx. 879, 882 (3d Cir.2001).

In an attempt to bolster his gender discrimination claim, Martonik baldly alleges his supervisors, Price and Posway, along with his temporary replacement Gerst, comprised a "co-operative 'clique,' trying to 'make a name for themselves by disciplining people.' Also, their reputation among the 20-30 managers in the Pittsburgh Area was sexual discrimination in favoring females getting employment opportunities." Plaintiff's Brief in Opposition to Defendant's Motion for Summary Judgment, [ECF No. 24 at ¶ 17]. To support this subjective assessment of these managers' reputation, Martonik relies on his own, uncorroborated statements made during a deposition, which is simply not enough. *Id.* Martonik cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument. *Berckeley Inv. Group, Ltd. v. Colkitt*, 455 F.3d 195, 201 (3d Cir. 2006) (quoting *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109-10 (3d Cir. 1985)). Martonik has failed to go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents to meet his burden of proving elements essential to his claim. *Celotex*, 477 U.S. at 322. *See also Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001).

Martonik has failed to offer material facts to establish essential elements of his Title VII gender discrimination claim under a disparate treatment theory, and there is no dispute of material facts that might cause a reasonable jury to find otherwise. The Postal Service's motion for summary judgment as to this claim should be granted.

### 3. Hostile Work Environment Claim

In addition to his allegations of disparate treatment discrimination, Martonik alleges that he was subject to a hostile work environment because of his age and gender. Compl., [ECF No. 1 at ¶ 6]. For a legitimate hostile work environment claim under Title VII, the harassment must affect a "'a term condition or privilege of the plaintiff's employment'. . . [and] the harassment 'must be sufficiently severe or pervasive to alter the conditions of the [victim's] employment and create an abusive working environment." *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 753 (3d Cir. 1995) (*citing Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986)). Similarly, to establish a hostile work environment claim under the ADEA, Martonik must show that his workplace was "'permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of [his] employment and create an abusive working environment.'" *Culler v. Secretary of U.S. Veteran Affairs*, 507 Fed.Appx. 246, 249 (3d Cir. 2012) (*citing Nat'l. R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 116 (2002))[4].

Adopting a 'totality of the circumstances' approach, the United States Supreme Court has stated that several factors may be taken into account in determining whether or not a hostile work environment exists, such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Systems*, 510 U.S. 17, 23 (1993). Furthermore, in *Harris*, the Supreme Court adopted the use of both subjective and objective standards:

> Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment-an environment that a reasonable person would find hostile or abusive-is beyond Title VII's purview. Likewise, if the victim does not

---

[4] Due to the nearly identical language used in both the Title VII and ADEA hostile work environment standards, these claims will be analyzed collectively. *See West v. Philadelphia Elec. Co.*, 45 F.3d 744 (3d Cir. 1995); *Culler v. Secretary of U.S. Veteran Affairs*, 507 Fed.Appx. 246 (3d Cir. 2012

> subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of the victim's employment, and there is no Title VII violation.

*Id.* at 754-55.

In support of his hostile work environment allegations, Martonik points to a phone discussion with Price, during which Price reprimanded Martonik for voicing negative sentiments during a conference call. Defendant's Concise Statement of Material Facts, [ECF No.19 at ¶ 19]. Though Martonik alleges that he felt "harassed" during the phone call and communicated that feeling to Price, Martonik specifically stated that he did not believe he was being harassed because of his age or gender. *Id.* Additionally, Martonik alleges that his temporary assignment to the Developmental Detail program was in retaliation for, and to harass because of, the conference call incident. Compl., [ECF No. 1 at ¶ 24]. Lastly, Martonik asserts that his Emergency Placement Without Pay constituted harassment. *Id.* at ¶ 49.

Initially, it is arguable that none of the above incidents constitute "harassment" at all. Both the phone call with Price and the Emergency Placement are more accurately defined as disciplinary measures, relatively mild ones at that, while the Development Detail program was a training program meant for Martonik's own benefit. However, assuming, *arguendo*, the above allegations do constitute harassment, the combined incidents are neither "severe" nor "pervasive" nor did they create "an abusive working environment." *West*, 45 F.3d at 753. Therefore, even accepting all of Martonik's factual allegations as true, no reasonable jury could take them to show that the Postal Service was "permeated with discriminatory intimidation, ridicule, and insult." *Harris*, 510 U.S. at 21.

Martonik has failed to offer material facts to establish essential elements of his hostile work environment claim under Title VII or ADEA, and there is no dispute of material facts that

might cause a reasonable jury to find otherwise. The Postal Service's motion for summary judgment as to this claim should be granted.

### 4. Retaliation

To establish a retaliation claim under the ADEA and Title VII, Martonik must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Culler*, 507 Fed.Appx. at 250 (*citing Fogleman v. Mercy Hosp., Inc.*, 283 F.3d 561, 567 (3d Cir. 2002))[5]. Protected employee activity consists of formal, or "participation," activities such as making a charge, testifying, assisting, or participating in an investigation, proceeding, or hearing and informal, or "opposition," activities which can mean any expressed opposition to unlawful employment practices. *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). Martonik cites two instances of protected activity: his phone conversation with Price on December 6th, 2010 and contacts with the Equal Employment Opportunity Commission ("EEOC") beginning on January 12th, 2011. Compl., [ECF No. 1 at ¶¶ 22, 57]. Martonik's EEOC contacts absolutely constitute protected activity; however his phone call with Price does not.

Courts within the Third Circuit have repeatedly found that it is critical that the specific message being conveyed, here a claim of harassment, implicate anti-discrimination laws and that general complaints of "unfair treatment" are not enough to constitute protected activity. *Moore*, 461 F.3d at 343; *Barber v. CSX Distribution Services*, 68 F.3d 694, 702 (3d Cir. 1995). Though Martonik expressed his feelings of harassment during the phone call with Price, by his own admission he did not believe he was harassed based on his age or gender. Defendant's Concise

---

[5] The elements for establishing a *prima facie* retaliation claim are the same for Title VII and the ADEA, and thus both claims will be analyzed collectively. *See Culler v. Secretary of U.S. Veterans Affairs*, 507 Fed.Appx. 246 (3d Cir. 2012); *Moore v. City of Philadelphia*, 461 F.3d 331 (3d Cir. 2006).

Statement of Material Facts, [ECF No. 19 at ¶¶ 17-19]. Thus, only the EEOC contacts, and not the telephone conversation, constitute protected activity.

While Martonik is able to show that he engaged in a protected activity and suffered an adverse employment action, his retaliation claim fails to establish a "causal connection" between the protected activity and the adverse employment action. *Culler*, 507 Fed.Appx. at 250. A casual connection is crucial: "[t]he ultimate question in any retaliation case is an intent to retaliate *vel non*." *Jensen v. Potter*, 435 F.3d 444, 449 n. 2 (3d Cir. 2006). The Developmental Detail and the Emergency Placement Without Pay actions both occurred <u>prior</u> to Martonik engaging in the protected activity, (the EEOC complaint), which obviously was not "after or contemporaneous with" any alleged retaliation. *Culler*, 507 Fed.Appx. at 250.

As for the Performance Improvement Plan, assuming it constitutes an adverse employment action, (which is dubious), Price and Posway were unaware of his EEOC contacts on January 12th, 2011 when they instituted the plan on January 24th, 2011. According to <u>undisputed</u> testimony, Price did not learn of Martonik's EEOC contacts until May 2011 and Posway was not aware until late April/early May 2011. Defendant's Concise Statement of Material Facts, [ECF No. 19 at ¶¶ 79, 81]. Without knowledge of the protected activity there can be no retaliation for it; as the Courts of Appeals for the Third Circuit stated, "[i]t is only intuitive for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

Martonik has failed to offer material facts to establish essential elements of his hostile work environment claim under Title VII or ADEA, and there is no dispute of material facts that might cause a reasonable jury to find otherwise

### III. Conclusion

For the reasons stated above, it is respectfully recommended that Defendant's Motion for Summary Judgment be granted on all counts.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72(D)(2) of the Local Rules for Magistrates Judges, Plaintiff is allowed until October 7, 2013, to file Objections to this Report And Recommendation. Failure to file Objections will waive the right to appeal. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all counsel of record